# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| **KAMAL K. PATEL,** | § | |
| **No. 56496-080,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **1:05-CV-225-BI** |
| **RONALD THOMPSON, et al.,** | § | **ECF** |
| | § | |
| **Defendants.** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER

This case is before the court upon Defendants' motion for summary judgment filed on June 5, 2009 (Doc. 145). The court permitted Defendants to file an amended motion for summary judgment on November 2, 2009 (Doc. 181).

Plaintiff filed motions for extension of time to file a response on November 9, 2009 (Doc. 186), and on December 7, 2009 (Doc. 192). Plaintiff filed 56(f) motions to continue until additional discovery has been permitted on December 7, 2009 (Doc. 194). Plaintiff filed a second 56(f) motion on June 18, 2010 (Doc. 242). Plaintiff filed his response to Defendants' amended motion for summary judgment on June 11, 2010 (Doc. 237), with a memorandum in support thereof (Doc. 238). Plaintiff filed a motion to strike and a memorandum in support on June 11, 2010 (Docs. 235, 236). Plaintiff filed a motion for partial summary judgment on June 18, 2010 (Doc. 240).

Plaintiff has filed motions seeking entry of a default judgment against Joseph Haro on November 9, 2009 (Doc. 187), and December 7, 2009 (Docs. 195, 196), and motions regarding whether Haro is represented by the assistant United States attorney in this case.

Plaintiff has filed additional motions with regard to seeking medical treatment and to continue any further pre-trial hearings and the trial in this case. Plaintiff also filed a statement of undisputed facts on June 18, 2010 (Doc. 243).

Plaintiff, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 on December 12, 2005. This court treats the complaint as filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994). Plaintiff is a federal inmate who was confined at all times relevant to the claims in his complaint at Federal Correctional Institution - Big Spring ("FCI Big Spring"), in Big Spring, Texas. The remaining Defendants in this case include Joseph M. Haro, who has not been served, William A. Sherrod, Trevino Tapia, Sean Marler, Wayne M. Huffman, John Clinton, Jimmie Wright, Sherry Jacobsen, Christopher Adams, John O'Brien, William Davis, Miguel Gomez, Roberto Rangel , David White, Gary Woods, Ruben Hernandez, Linda Patton, Cathy New, Edward Olivas, Joel Perez, Robert Speaker, and David Freshour.

By order dated June 2, 2006, this case was transferred to the docket of United States Magistrate Judge Philip R. Lane for screening pursuant to 28 U.S.C. §§ 1915 and 1915A. Plaintiff completed a questionnaire; the court conducted the initial review. The court entered a report and recommendation which was accepted in part by the United States district judge. Certain of Plaintiff's claims and certain Defendants were dismissed.

Defendants filed a motion for summary judgment on Plaintiff's remaining claims on June 5, 2009 (Doc. 145). Defendants were given leave to file an amended motion for summary judgment, which was filed on July 1, 2009 (Doc. 151). Plaintiff filed a response to the summary judgment motion on June 11, 2010, and a motion for partial summary judgment on June 18, 2010.

# I.   FACTUAL BACKGROUND

1.      Plaintiff arrived at FCI Big Spring on March 6, 2003, and left on January 20, 2004.

2.      Upon his arrival, Plaintiff was placed in the Special Housing Unit ("SHU"), which Plaintiff calls the "hole."   Plaintiff was released from the SHU to the general population on March 11, 2003.

3.      Plaintiff wrote numerous grievances regarding his complaints about the institution, as well as letters to the Office of the Inspector General ("OIG") and to a federal judge.

4.      The executive staff at FCI Big Spring, including Haro, Sherrod, Tapia, Huffman, and Clinton, implemented a policy of routinely opening and reading inmate mail and indicated that such mail could be opened if there was a security need, including incoming marked legal mail.  Items were also confiscated.

5      Plaintiff was retaliated against for his complaints.

6.      Plaintiff was employed as an orderly in the chapel.

7.      On August 6, 2003, Plaintiff met with Ronald Holland, a special agent with the OIG.

8.      Plaintiff was thereafter reassigned from his job as an orderly in the chapel to work as a grounds orderly. Chaplain Wright wrote a memo on August 7, 2003, explaining why Plaintiff was removed from his job as chaplain orderly.  Wright told him that the "official reason" might have some holes in it.

9.      Plaintiff was subjected to a retaliatory false disciplinary case and subjected to significant punishment although disciplinary cases involving more serious conduct by white supremacist inmates resulted in reduced charges or dismissal.  Plaintiff was deprived of due process of law and equal protection of the laws.

10.      Plaintiff was placed in the hole on September 7, 2003.   The reason given for Plaintiff's placement in the hole was a Special Investigative Section ("SIS") investigation.  Plaintiff

remained in the hole for several months. Plaintiff's placement in the hole was in retaliation for constitutionally protected activities.

11.     Plaintiff was placed in a cell with Leroy Alaniz while in the hole.  Plaintiff asked to be placed with other inmates but his request was denied.  Plaintiff was told that Alaniz was dangerous.  When Plaintiff and Alaniz had a disagreement, Alaniz assaulted him and yelled that he "should have done this to you when I was first warned about you by Ms. [Linda] Patton."

12.     As a result of the assault, Plaintiff sustained injuries.

13.     While he was confined to the SHU, Plaintiff  was not given any formal segregation review hearings.

14.     Plaintiff is a non-smoking inmate and suffers from asthma and allergies exacerbated by tobacco smoke.  Haro, Sherrod, Tapia, and Huffman failed to enforce applicable Bureau of Prisons ("BOP") policy, which provides that the areas indoors, the entrance areas to the building, and the areas within 25 feet of the buildings and entrances are deemed non-smoking areas.  As a result of this policy, Plaintiff was exposed to secondhand smoke on a daily basis which increased his problems with asthma, increased his use of his inhaler, and aggravated his allergies, causing irritated eyes and nose and coughing.

15.     Plaintiff was subjected to a transfer from FCI Big Spring to FCI Forrest City.  Such transfer was in retaliation for his litigation and cooperation with the OIG investigation.  In order to justify the transfer, officials indicated that he had demonstrated poor responsibility and poor institutional adjustment by failing to pay his fine.  Officials also indicated that a transfer was needed to protect Plaintiff from inmate Alaniz.  However, Alaniz had already been released at that time. Officials made false statements about his institutional adjustment, attitude, participation, and responsibility, which prompted the transfer and affected his treatment and job placement at his new institution.

## II.   REMAINING CLAIMS

Plaintiff's remaining claims are as follows:

**1.      Work Assignment Claim**

Plaintiff arrived at FCI Big Spring on March 6, 2003, and left on January 20, 2004.  Plaintiff was assigned to work as an orderly in the chapel.  Plaintiff worked in this job assignment until August 7, 2003, when he was assigned to work as a grounds orderly.

Plaintiff alleges that he met with an OIG agent on August 6, 2003, and provided the agent with materials related to an investigation into alleged improprieties at the unit.  Plaintiff alleges that thereafter he lost his job as an orderly in the chapel.

Plaintiff claims that his job loss was in retaliation for his involvement in the investigation.

**2.      Discrimination in Disciplinary Proceedings and Retaliatory Incident Report**

Plaintiff alleges that officials at FCI Big Spring have a policy of discriminating against minority inmates with regard to disciplinary proceedings.  Plaintiff alleges that white supremacist inmates were given less severe disciplinary charges and sanctions.  Plaintiff alleges that he complained about this practice to Defendant Olivas and that Olivas referred his grievance to the FCI Big Spring Special Investigative Section ("SIS") where such complaint was covered up.  Plaintiff alleges that he was the subject of an investigation which led to an incident report for making a false statement, that he was deprived of law with regard to the disciplinary case, and that the Defendants retaliated against him.

**3.      Placement in Special Housing Unit**

Plaintiff alleges that after he his submitted his grievance about the disciplinary process and asked that Sherrod and Jacobsen be investigated, an article of mail was lost or stolen and was read by Defendant Huffman.   Plaintiff alleges that Huffman had him placed in the SHU under the false pretext of an SIS investigation.  Plaintiff alleges that Huffman obtained and read mail Plaintiff

received related to litigation against the Warden of the Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno"). Plaintiff alleges that Huffman, Haro, Sherrod, Tapia, and Clinton decided to have Plaintiff removed from the general population and placed in the SHU on a retaliatory pretext. Plaintiff also alleges that his rights under the First Amendment were violated when his mail was improperly handled.

**4.    Instigated Assault and Attempted Assault**

Plaintiff alleges that while he was confined to the SHU, he was placed in a cell with Alaniz, an inmate who had been in the SHU for a long period of time to protect him from gang-related activity. Plaintiff asked to be placed with two other inmates but was placed with Alaniz. Plaintiff alleges that he was housed with Alaniz to expose him to the possibility of assault and that when no assault occurred, Defendant Patton met with Alaniz and instigated an assault upon him by Alaniz. Plaintiff alleges that an investigation into the assault was suppressed to "cover up" the role played by Patton in the assault.

Plaintiff further alleges that Defendant Hernandez told two inmates that Plaintiff had filed grievances indicating that the inmates were the beneficiaries of a discriminatory discipline process, thereby labeling Plaintiff as a "snitch." Plaintiff alleges that Hernandez placed him in danger of violence in so doing.

**5.    Interference with Legal Mail**

Plaintiff alleges that officials failed to open certain items of his mail only in his presence. Plaintiff alleges that this interfered with his rights under the First Amendment.

**6.    Illegal Opening and Theft of Media Mail**

Plaintiff alleges that a letter he wrote to a member of the media was taken by Defendant, read, and the contents distributed to various prison officials.

**7.    Failure to Conduct Segregation Review Hearings**

Plaintiff alleges that while he was in the SHU, Defendants failed to conduct segregation review hearings and had such hearings been held in accordances with applicable policy, he would have been released from the SHU.

**8.    Exposure to Environmental Tobacco Smoke**

Plaintiff alleges that while he was confined to FCI Big Spring, he was exposed to excessive environmental tobacco smoke.  Plaintiff alleges that his asthma and allergies were exacerbated by tobacco smoking in permitted and impermissible areas.

**9.    Retaliatory Transfer**

Plaintiff alleges that he was transferred from FCI Big Spring to FCC Forrest City in retaliation for his litigation activity and cooperation into alleged improprieties at FCI Big Spring. Plaintiff alleges that officials intended to increase his custody level and transfer him to a medium security facility.

Defendants moved for summary judgment on each of these claims.

Plaintiff again asked to continue any determination of the motion for summary judgment until additional discovery is provided.  Plaintiff also moved for partial summary judgment against Sherrod on count 2; Rangel on count 15(c); and against Rangel, Huffman, Haro, Tapia, Sherrod, Clinton, White, Woods, Davis, Gomez, and Jacobson on counts 7 and 9.

### III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment may permit a court to resolve a lawsuit without conducting a trial. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). To determine whether there are any material factual issues, the court considers applicable substantive law to define which issues are material and then considers the evidence relevant to those issues in the light most favorable to the nonmoving party. *Williams v. Kaufman County,* 352 F.3d 994, 1001 (5th Cir. 2003). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Summary judgment is only appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact precluding judgment as a matter of law for the movant. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). In determining summary judgments, all inferences are drawn in favor of the nonmoving party. *Austin v. Johnson*, 328 F.3d 204, 207-08 (5th Cir. 2003). However, "the nonmoving party may not rest on the allegations or denials of [his] pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (quoting *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999)).

The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, when ruling on a motion for summary judgment. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998). The party moving for summary judgment must first demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this requirement by either (1) submitting evidentiary documents that negate the existence of some material element of the nonmoving party's claim or (2) merely pointing out the absence of evidence to support the nonmoving party's claim if the nonmoving party will bear the burden of proof on that claim at trial. *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994). There is no requirement that the

moving party support his motion with affidavits or other similar materials negating the opponent's claim. *Celotex,* 477 U.S. at 323.

If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Priester v. Lowndes County,* 354 F.3d 414, 419 (5th Cir. 2004). If the moving party supports his motion with evidence, the nonmoving party cannot simply rely on conclusory legal allegations but must present affirmative evidence in order to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-55; s*ee Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (holding that unsupported allegations, affidavits, or depositions merely setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999).

## IV.   ANALYSIS

Plaintiff alleges that he was subjected to various forms of retaliation. He alleges that his job was changed, he was given a false retaliatory incident report, he was placed in the SHU, and he was given a retaliatory transfer to a different institution. Plaintiff also alleges that officials failed to protect him from an inmate assault; that officials deprived him of due process with regard to his placement in the SHU by failing to provide him with regular formal segregation review hearings and subjected him to a false incident report and deprived him of procedural due process with regard to such disciplinary case; that he was subjected to environmental tobacco smoke, and that his legal mail and letters to the media were read and certain items of mail to the media were confiscated.

Defendants argue that they are entitled to summary judgment and qualified immunity on Plaintiff's claims.

The court therefore also considers whether Defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officers' conduct violated a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier*, 533 U.S. at 201; *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

"Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope*, 536 U.S. at 739 (quoting *Saucier*, 533 U.S. at 206). This privilege is "an *immunity from suit* rather than a mere defense to liability . . . ." *Saucier*, 533 U.S. at 200-01.

The court employs a two-step inquiry to determine whether the individual defendants are entitled to qualified immunity. *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (citing *Price*, 256 F.3d at 369). First, the court must determine whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right. *Linbrugger*, 363 F.3d at 540 (citing *Price*, 256 F.3d at 369). If no constitutional right has been violated, the inquiry ends and the defendant is entitled to qualified immunity. *Id.* If the plaintiff has alleged a constitutional violation, the court must next determine whether the official's conduct was objectively unreasonable under established law. *Id.* (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)). The first question is governed by the current understanding of constitutional rights and the second by what was reasonably understood at the time of the challenged act. *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002).

For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Saucier,* 533 U.S. at 202. If the allegations do not establish the violation of a constitutional right, the officer is entitled to qualified immunity. *Id.* at 201. If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Where an officer makes a reasonable mistake as to what the law requires, that officer is entitled to immunity. *Id.* at 205.

The first prong of the qualified immunity test – whether Plaintiff has alleged a violation of a clearly established constitutional right – depends on whether the summary judgment evidence, viewed in a light favorable to the Plaintiff, indicates that the Defendants subjected him to retaliation, deprived him of due process of law, deprived him of equal protection of the laws, failed to protect him, violated his rights under the First Amendment with regard to his mail, or subjected him to unconstitutional conditions in the form of exposure to environmental tobacco smoke.

Plaintiff alleges that Defendants retaliated against him for his grievances and complaints in several ways, such as by changing his job, subjecting him to a false incident report, placing him in the SHU and keeping him there, and transferring him to another unit. Plaintiff alleges that he was deprived of due process with regard to the incident report and the procedures of the disciplinary hearing process related to such report. Plaintiff also alleges that the Defendants' failure to provide him with appropriate segregation reviews after his placement in the SHU deprived him of due process. He alleges that the disciplinary process was used in a discriminatory way and that white supremacist inmates were treated better. Plaintiff alleges that officials failed to protect him from an assault by an inmate, read and confiscated certain mail items, and subjected him to environmental tobacco smoke.

## A.     Work Assignment Claim

Plaintiff alleges that he was assigned to work as an orderly in the chapel; that his job assignment was later changed to ground orderly; and that his job change was in retaliation for his participation in an OIG investigation.

To state a valid claim for retaliation under Section 1983, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Grenginer,* 188 F.3d 322, 324-25 (5th Cir. 1999). A plaintiff's personal belief that he was the victim of retaliation is not sufficient to support his claim of retaliation. *Id.* Moreover, mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Plaintiff is required to "produce direct evidence of motivation," or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* A plaintiff's personal belief that he was the victim of retaliation is not sufficient to support his claim of retaliation. *Id.* Moreover, mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Although prisoners may be transferred to a different job "for almost any reason or no reason at all," a transfer cannot be made in retaliation for the exercise of constitutional rights. *See Jackson v. Cain*, 864 F.2d 1235, 1248 n.3 (5th Cir. 1989).

The undisputed facts indicate that Plaintiff was assigned to work as an orderly in the chapel from March 27, 2003, through August 7, 2003. The undisputed facts demonstrate that Plaintiff submitted numerous administrative grievances while confined to FCI Big Spring and during all times relevant to the claims remaining. Defendants have come forward with information indicating that officials had several concerns about Plaintiff's assignment to the chapel including whether he might work on his grievances during his work time and that as someone dissatisfied with "virtually all aspects of FCI Big Spring conditions and operations," Plaintiff could possibly take advantage of the relatively light supervision in this work assignment to encourage activities which might disrupt security and the orderly operation of the institution. Wright was ordered to move Plaintiff and other inmates from chapel jobs as part of a security-based need to rotate work assignments. The parties agree that sometime thereafter, an inmate rotation policy was developed for certain institution departments.

Plaintiff responds by arguing that most of his grievance were typed on the unit and he was never involved in any riots or other types of security disturbances. He argues that the job change to grounds orderly was less desirable.

The parties agree that Plaintiff's job was changed and that his job assignment from chapel orderly to grounds orderly was a reflection of concerns about his dissatisfaction with FCI Big Spring and its officials, operations, and policies. The Defendants have come forward with evidence that Plaintiff's job change was a result of security and other concerns related to his obvious dissatisfaction with FCI Big Spring and what officials deem the light supervision provided to chapel orderlies. While Plaintiff argues that the job change was more than "*de minimis*," because assignment to work as a grounds orderly is less desirable, Plaintiff asserts that the job was "one to cause idleness, boredom, and fatigue," requiring Plaintiff to remain outdoors "with nothing to do." Pl. Memorandum in Response at 5 (Doc. 238). Plaintiff's assertions, accepted as true, fail to

demonstrate that the job change was more than *de minimis*. *See Morris*, 449 F.3d at 687; *See Jackson*, 864 F.2d at 1248 (Transfer to a job involving 47 days of supervised hard labor may raise a genuine issue of material fact making summary judgment on retaliation claim improper). In *Jackson* the plaintiff was told that if he stopped writing letters of complaint, his punishment in the form of a job assignment to hard labor would be rescinded. 864 F.2d at 1239. In this case Plaintiff was reassigned to work which he found tedious. However, his allegations fail to demonstrate that the job change was more than *de minimis*. Moreover, the evidence presented fails to demonstrate that but for Plaintiff's grievance activities, his job would not have been changed. The parties agree that sometime after his job was changed, a policy of work assignment rotation to jobs such as in the chapel was instituted. In addition, the evidence demonstrate that the job change did not deter him from further exercising his constitutional rights in the form of complaining about FCI Big Spring officials or policies. As noted, retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686.

Defendants have come forward with facts demonstrating that essential elements of Plaintiff's claim are absent. They are, therefore, entitled to qualified immunity and summary judgment on this claim.

**B.     Retaliatory Incident Report, Disciplinary Process, and SHU Placement and Reviews**

Plaintiff argues that he was subjected to a false retaliatory disciplinary report after he complained to officials that the disciplinary process was applied in a discriminatory fashion, such as white supremacist inmates were given preferential treatment as compared to minority inmates, such as Plaintiff. Plaintiff alleges that his complaint was referred to SIS. Plaintiff alleges that SIS officials, including Clinton, Rangel, and Hernandez began to investigate him, and he was given an incident report for lying or providing a false statement to staff.

Plaintiff went before the Unit Discipline Committee ("UDC") conducted by Defendant New, who referred the matter to the Disciplinary Hearing Officer, rather than dealing with the matter herself. He alleges that he requested Defendant Wright as his staff representative, but Wright later indicated that he could not assist Plaintiff. The matter was referred back to the UDC, which cannot impose more severe sanctions, such as loss of good conduct time. Plaintiff alleges that Speaker initially indicated that he did not see a rule violation, but Hernandez told Plaintiff that he had read the file and told Plaintiff that he would not beat the incident report. Plaintiff alleges that he was thereafter found guilty of the incident report in retaliation.

Plaintiff alleges that on September 4, 2003, shortly after submitting his grievance about the process, he submitted another grievance claiming that a letter from a federal judge ordering that certain matters be investigated was being ignored by FCI Big Spring officials. Plaintiff alleges that Huffman managed to obtain mail addressed to Plaintiff from the United States attorney's office in Oklahoma City, Oklahoma, regarding Plaintiff's claims against the former warden of FCI - El Reno in El Reno, Oklahoma. Plaintiff claims that Huffman opened and read the mail and that as a result of this mail, Plaintiff's grievances and his participation in an OIG investigation into alleged misconduct at FCI Big Spring, Huffman, with the agreement of Haro, Sherrod, Tapia, and Clinton, moved Plaintiff from the general population into the SHU. Plaintiff alleges that the SHU detention order falsely indicated that such detention was pursuant to an investigation and that he was so detained until he left FCI Big Spring.

The uncontested facts indicate that Plaintiff was placed in the SHU and a detention order was entered. The uncontested facts indicate that there was a delay in interviewing Plaintiff and that he was not initially given an incident report. The uncontested facts indicate that Plaintiff's incident report was initially and finally before the UDC, which did not impose the sanction of loss of good conduct time.

In the context of the disciplinary hearing process, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Inmates who are charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Such liberty interests may emanate from either the Due Process Clause itself or from state law. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id*. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995). The protections afforded by the Due Process Clause thus do not extend to "every change in the conditions of confinement" which adversely affects prisoners. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

Due process requires that the prisoner receive (1) a twenty-four hour advance written notice of the hearing on the claimed violation; (2) an opportunity to be heard, including the ability to call witnesses and present evidence in his defense, when consistent with institutional safety and correctional goals; and (3) a written statement of the fact-finder detailing the evidence relied upon and the reasons for the disciplinary action. *See Wolff,* 418 U.S. at 563-67; *see, e.g., Hallmark v. Johnson,* 118 F.3d 1073, 1080 (5th Cir. 1997) (Lack of due process claim fails where claimant does not explain how the alleged claim prejudiced the preparation of his defense.). Due process also

requires at a minimum that "some evidence" in the record supports the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985); *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005); *see, e.g., Black v. Warren,* 134 F.3d 732, 734 (5th Cir. 1998) (per curiam) (inmate's civil rights suit alleging that no evidence supports disciplinary action against him properly dismissed as record revealed that "some evidence" supported charge). The "some evidence" standard is extremely deferential. *Morgan,* 433 F.3d at 457. The "some evidence" requirement was met where the correction officer's testimony and the inmate's own statement about striking another inmate constituted "some evidence" to support the counsel's decision to punish the inmate for fighting. *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir. 1995) (per curiam).

Plaintiff's alleges that he was unable to obtain the testimony of certain witnesses and the staff representative that he wanted. He further alleges that he was found guilty even though New indicated that she did not see a rule violation and that Hernandez said that he would get out of the disciplinary case. Plaintiff's assertions, however, accepted as true, simply do not demonstrate that the due process protections of *Wolff* were implicated by his incident report and the disciplinary hearing before the UDC. Defendants have come forward with "some evidence" to support the disciplinary finding. Plaintiff argues that he faced the possibility of losing good conduct time. However, Program Statement 5770.07, a portion of which Plaintiff submits as an exhibit and which can be found at the Bureau of Prisons website, provides in pertinent part that the UDC may impose loss of certain privileges. In any case, the undisputed facts indicate that Plaintiff was not sanctioned with the loss of good conduct time.

Plaintiff also asserts that the incident report was "false." The court notes that malicious prosecution no longer provides an independent basis for a section 1983 claim (or a *Bivens* claim) in the Fifth Circuit. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[N]o . . . freestanding constitutional right to be free from malicious prosecution exists."). Thus, an inmate's

claim that an officer initiated disciplinary proceedings against him without probable cause does not state a claim. *Id.*

The undisputed facts indicate that Plaintiff was given an initial detention order regarding his placement in the SHU. Plaintiff alleges that he did not receive formal detention reviews every 30 days as required by applicable BOP policy. Indeed, Plaintiff has repeatedly asserted that officials have violated various BOP policies. The court notes that a prison authority's failure to follow internal rules or administrative procedures does not give rise to any issue of constitutional magnitude as long as minimum constitutional requirements are met. *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Moreover, an inmate's confinement to administrative segregation may only constitute a valid due process claim when it imposes an "atypical and significant hardship." *Sandin*, 515 U.S. at 484. The Fifth Circuit noted that cases where segregated confinement was sufficiently atypical to implicate a due process liberty interest involved harsh circumstances – such that being held for 30 years on lockdown status *might* violate due process. *Hernandez v. Velasquez*, 522 F.3d 556, 562 (2008). In *Hernandez*, for example, the inmate was locked down for twelve months. *Id*.

Plaintiff also alleges that the incident report was retaliatory. However, Plaintiff's factual allegations fail to demonstrate that but for engaging in constitutionally protected activity, he would not have received the incident report.

Plaintiff alleges that white supremacist inmates are treated differently, that minority inmates are discriminated against, and that he has been deprived of equal protection of the laws with regard to the disciplinary process.

The Equal Protection Clause directs that persons similarly situated should be treated alike. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To succeed on an equal protection claim, the Plaintiff must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated. *Freeman*, 369 F.3d at 862

(citing *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992)).  Under the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), the validity of a prison regulation or practice turns on whether the regulation or practice is "reasonably related to a legitimate penological interest." *Turner*, 482 U.S. at 89. The test in *Turner* applies to equal protection claims.  *Freeman*, 369 F.3d at 863.  A violation of equal protection occurs only when the governmental action in question "classifies or distinguishes between two or more relevant persons or groups[,]" or when a classification impermissibly interferes with a fundamental right.  *Edwards v. Johnson*, 209 F.3d 772, 780 (5th Cir. 2000) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) and citing *Hatten v. Rains*, 854 F.2d 687, 690 (5th Cir. 1988)).   It is clearly established that a state violates the equal protection clause when it treats one set of persons differently from others who are similarly situated.  *Yates v. Stalder,* 217 F.3d 332, 334 (5th Cir. 2000) (citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)).

Defendants argue that Plaintiff has failed to come forward with any evidence to demonstrate the elements of an equal protection claim.  They argue that he has failed to show discriminatory purpose, that he was treated differently from similarly situated inmates, that Defendants purposefully discriminated against him, or any disparate treatment not rationally related to a legitimate penological interest.

A prisoner's vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim.  *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990).  Insofar as he alleges an equal protection violation, Plaintiff has the burden of proving the existence of purposeful discrimination.  *Edwards*, 209 F.3d at 780 *(*citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).

Plaintiff relies on his conclusory allegatiosn to support his equal protection claim. Making all inferences in Plaintiff's favor, it is nevertheless apparent that he has failed to meet any of the criteria of an equal protection claim.

Having made all inferences in Plaintiff's favor, Defendants have come forward with evidence demonstrating that essential elements of Plaintiff's due process, retaliation, and equal protection claims regarding the disciplinary process, his incident report, and his confinement to the SHU are absent. Plaintiff's evidence and the undisputed facts do not demonstrate that there is any genuine issue of material fact on these claims. Defendants are thus entitled to summary judgment and qualified immunity on Plaintiff's due process, retaliation, and equal protection claims regarding his incident report, the disciplinary proceedings therein, his confinement to the SHU, and the treatment of white supremacist inmates with regard to disciplinary process.

## C.    Failure-to-Protect Claim

Plaintiff alleges that Defendants failed to protect him from the assault by inmate Alaniz. The undisputed facts indicate that Plaintiff was assigned to share a cell with Alaniz while in the SHU. It is undisputed that Alaniz was confined to the SHU because he was a member of a disruptive group, that a disruptive group intended to harm him, and that he could thus not be housed with certain inmates. Defendant Patton was the assigned case manager for both Plaintiff and Alaniz. The parties agree that Patton likely had occasion to speak with Alaniz privately while he was in the SHU. The parties also agree that Plaintiff notified officials that he needed to be moved after Alaniz struck him several times.

A prison official may violate the Eighth Amendment if he is deliberately indifferent to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In this context, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames*

*v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838). A claimant, however, may rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate. *See Hope*, 536 U.S. at 738. Mere negligence or neglect does not constitute deliberate indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Plaintiff alleges that officials not only knew that Alaniz was dangerous but encouraged Alaniz to assault him. He argues that officials "went through a lot of trouble to get Plaintiff into the cell with Alaniz, that the OIG investigation after the incident indicated that one official congratulated Alaniz on his "good job," and that officials failed to discipline Alaniz.

"To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones,* 188 F.3d at 326 (quoting *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998)). In a failure-to-protect claim, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (quoted in *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995)). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Id.* at 839-40.

The uncontested facts and the allegations of Plaintiff fail to demonstrate that Alaniz clearly posed a substantial risk of serious harm to Plaintiff, that officials were aware of this risk, and that officials were deliberately indifferent to such risk. The undisputed facts indicate that Alaniz was

a member of a threat group, was in danger from other threat group members, and was housed with Plaintiff, who posed little risk to him. Plaintiff argues that the risk posed by Alaniz was obvious. However, Plaintiff's allegations fail to demonstrate that he was himself aware of such risk and notified officials that he needed to be moved to another cell until after the incident with Alaniz. The admitted failure of officials to follow through in filing a disciplinary case against Alaniz does not demonstrate that they encouraged Alaniz to attack Plaintiff or that they planned for the assault to occur.

Defendants have come forward with evidence showing that necessary elements of Plaintiff's failure-to-protect claim are missing, even considering the undisputed facts and allegations and making all inferences in Plaintiff's favor.

Defendants are therefore entitled to summary judgment and qualified immunity on this claim.

## D.    Mail Claims

Plaintiff alleges that officials improperly opened and examined his incoming mail, including incoming legal mail, and reviewed and confiscated items of mail intended to go to the media.

Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). It is well established that inmates have a constitutional right of access to the courts. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). It is also well established that prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts. *Woods*, 60 F.3d at 1164. A prisoner does retain, in a general sense, a right to criticize prison officials. *Freeman*, 369 F.3d at 864. A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *Morris*, 449 F.3d at 684 (citing *Woods*, 60 F.3d at 1164). A guard thus may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's conduct. *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir.

1986).  Rather, "[a] prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest."  *Jackson*, 864 F.2d at 1248 (citations omitted).

Clearly, this right is not unlimited; the right of access to the courts includes a "reasonably adequate opportunity to file non-frivolous legal claims . . ."  *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997).  However, secondary litigation activity does not "comprise the basis of a retaliation claim."  *See Id.* at 310.  The protections afforded an inmate's mail are generally related to his constitutional right of access to the courts and to free speech and association.  *See, e.g., Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988) (Clearly marked legal mail may not be censored.).  Prison officials may establish reasonable regulations, even with regard to legal mail, such as requiring an attorney to identify himself in writing to prison officials before they must treat mail as legal mail.  *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir. 1992) (citing *Taylor v. Sterrett*, 532 F.2d 462, 475 n.20 (5th Cir. 1976)).

Thus, it is apparent that reasonable regulations regarding prisoner mail may be constitutional, where such a policy is reasonably related to legitimate penological interests.  *See Chriceol v. Phillips*, 169 F.3d 313, 316-17 (5th Cir. 1999) (noting that prison officials may establish reasonable regulations regarding prisoner mail, even where a prisoner claims that rights to free speech and association are implicated).

Clearly marked legal mail may not be censored.  *Freeze*, 849 F.2d at 175.  Plaintiff's allegations, accepted as true, indicate that his mail was opened.  However, prison officials may open incoming legal mail to inspect it for contraband.  *See Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993).

BOP Policy Statement 5800.10, chapter 3, section 305 provides that special mail should adequately identify the sender as an attorney and that the mail be marked "Special Mail - Open Only

in the Presence of Inmate." To make unit officials aware of a request for special mail status, this policy statement provides in pertinent part:

> Specifically, the attorney must be adequately identified on the envelope as an attorney and the envelope must be marked "Special Mail - Open Only in the Presence of the Inmate," or with similar language clearly indicating that particular item of correspondence qualifies as special mail and the attorney is requesting the correspondence be opened only in the inmate's presence.

BOP Policy Statement 5800.10, chapter 3, section 305.[1] 28 U.S.C. § 540.18 provides that special mail will be opened in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail, so long as the sender is adequately identified on the envelope and the front of the envelope is marked "Special Mail – Open only in the presence of the inmate." 28 U.S.C. § 540.18(a). In the absence of *either* adequate identification *or* the special marking described, unit staff "may treat the mail as general correspondence and may open, inspect, and read the mail." Plaintiff's exhibits indicate that the items of mail that he alleges were opened did not contain the specific language noted or did not indicate that such mail should only be opened in the presence of Plaintiff.

The right to free speech is relevant to claims involving both legal and non-legal inmate mail. *Brewer*, 3 F.3d at 820. Under some circumstances, prisoners enjoy a limited First Amendment right to communicate with the press. So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, prison officials are accorded latitude in fashioning restrictions on time, place, and manner of such communications. *Stefanoff v. Hays County*, 154 F.3d 523, 527 (5th Cir. 1998). Such restrictions, however, must be reasonably related to a legitimate penological interest. *Id.* Prison officials are permitted to open and read all of

---

[1] This policy statement is also available online at http://www.bop.gov.

an inmate's non-privileged general correspondence due to the legitimate penological concerns regarding security, order, and rehabilitation. *Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004).

The undisputed facts indicate that Plaintiff's letter to the *Dallas Morning News* was opened and reviewed. Rangel prepared a memorandum disseminated to certain FCI Big Spring officials indicating the general content of the letter and suggesting that Plaintiff and another inmate, who he complained was being given preferential treatment, be kept separate. The evidence provided indicate a legitimate penological interest in ensuring Plaintiff's safety in reviewing the content of Plaintiff's letter to the *Dallas Morning News* and conveying information designed to protect Plaintiff to selected officials. Plaintiff's allegations and the undisputed facts demonstrate that Plaintiff continued to make his complaints regarding preferential treatment and conditions known to officials. There is no question that Plaintiff retained other reasonable and effective methods of communicating his views after his mail to the *Dallas Morning News* was reviewed by Rangel. *See Stefanhoff*, 154 F.3d at 527.

To the extent that Plaintiff claims that Rangel and other Defendants violated applicable BOP policies in the treatment of his mail, a violation of prison regulations, without more, does not give rise to a federal constitutional issue. *Myers*, 97 F.3d at 94; *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

Plaintiff also alleges that certain items of mail were lost, confiscated, or stolen by prison officials. He relies upon an affidavit from an official indicating that a piece of mail was sent via legal mail procedures to the prison, and Plaintiff did not receive it. Plaintiff indicates in a motion to compel filed June 11, 2010 (Doc. 234), that he was not provided with a mail log by the Defendants in order to respond to the Defendants motion for summary judgment.

The court notes that a prisoner may not bring a federal claim for deprivation of property through the "random and unauthorized" acts of government officers, whether negligent or

intentional, when state law provides an adequate remedy. *Sheppard v. La. Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (quoting *Hudson*, 468 U.S. at 533-35). Texas has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995). Considering the undisputed facts and making all inferences in Plaintiff's favor, the court nevertheless finds that Defendants have demonstrated that Plaintiff's mail claims lack essential elements and that they are thus entitled to summary judgment and qualified immunity on these claims.

**E.     Environmental Tobacco Smoke**

Plaintiff alleges that while incarcerated at FCI Big Spring, he was subjected tenvironmental tobacco smoke because certain officials failed to enforce applicable BOP policies prohibiting smoking in certain areas.

Prisoners have a constitutional right under the Eighth Amendment not to be involuntarily exposed to "unreasonably high levels" of environmental tobacco smoke ("ETS") or other toxins. *Helling v. McKinney,* 509 U.S. 25, 35 (1993). The Fifth Circuit has recognized potential ETS claims where exposure to tobacco smoke was severe and sustained, such as when the plaintiff was forced to live and work in environments filled with tobacco smoke or when the plaintiff claimed that his smoking environment was associated with his bronchitis and facial rash and the prison doctor reported that the plaintiff needed non-smoking quarters. *Whitley v. Hunt,* 158 F.3d 882, 887-88 (5th Cir. 1998); *Rochon v. City of Angola,* 122 F.3d 319, 320 (5th Cir. 1997). However, the Fifth Circuit rejected an ETS claim where the plaintiff was exposed to tobacco smoke on bus rides to and from work. *Richardson v. Spurlock,* 260 F.3d 495, 498-99 (5th Cir. 2001) (Sporadic and fleeting exposure to second-hand smoke does not constitute unreasonably high levels of ETS, even if it causes discomfort such as coughing and nausea.). A two-prong test is used to determine whether ETS exposure violates a prisoner's Eighth Amendment rights. First, the prisoner must prove objectively

that he is "being exposed to unreasonably high levels of ETS." *Helling,* 509 U.S. at 35. The court must inquire into the seriousness of the potential harm and the likelihood that ETS will actually cause such harm. *Id.* at 36. The court must assess whether society considers the risk to be so grave that it violates contemporary standards of decency to expose someone unwillingly to such a risk. *Id.* Under the second prong of the test, the plaintiff must show that the defendants acted with deliberate indifference in exposing him to a level of ETS that posed an unreasonable risk of serious damage to his future health. *Id.* at 35. Deliberate indifference requires a finding of "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). In evaluating deliberate indifference to ETS, the court should consider whether a smoking policy has been adopted, the administration of that policy, and the realities of prison administration. *Helling,* 509 U.S. at 36-37.

Plaintiff alleges that inmates and staff were permitted to smoke in the doorways and entrances to all buildings and in the recreation yard, although they are non-smoking areas, which caused an increase in his asthma problems, increased his daily usage of his inhaler, aggravated his allergies, caused irritation of his eyes and nose, and caused coughing. He claims that Haro, Sherrod, Tapia, and Huffman were directly responsible for the hands-off policy of not enforcing the regulations that did not allow smoking in the areas specified.

Plaintiff is required to make a showing that he was exposed to unreasonably high levels of ETS at FCI Big Spring and that officials were deliberately indifferent to the harm of ETS. Plaintiff's allegations, accepted as true, indicate that he was exposed to ETS at the entrances of buildings and in the recreation yard. Plaintiff alleges that after he complained about smoking by inmates and staff, officials declared that certain areas were for smoking by the staff only. Plaintiff's own allegations indicate that after he complained, officials took action to limit smoking at least by inmates in those areas.

The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference. *See also, Whitley*, 158 F.3d at 887-88; *Rochon*, 122 F.3d at 320; *Wilson v. Lynaugh*, 878 F.2d 846 (5th Cir.), *cert. den*., 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989). FCI Big Spring had a non-smoking policy. The undisputed facts indicate that a non-smoking policy was in effect. Accepting Plaintiff's allegations as true, that he was subjected to ETS outside building entrances and in the recreation yard and that he experienced an exacerbation of his asthma as a result, it is nevertheless clear that Plaintiff has failed to provide evidence indicating that his exposure to ETS at FCI Big Spring was so grave that it violated contemporary standards of decency. Moreover, Plaintiff's own allegations demonstrate that after he complained, official took action to limit smoking in those areas to staff only, rather than staff and inmates. Plaintiff's allegations and the undisputed facts fail to create a genuine issue of material fact as to whether the two *Helling* criteria have been met.

Having made all inferences in Plaintiff's favor and having accepted the undisputed facts and his allegations as true, the court finds that Defendants are entitled to summary judgment and qualified immunity on this claim.

**E.      Retaliatory Transfer**

Plaintiff alleges that as a result of his complaints, officials at FCI Big Spring arranged for his transfer to FCI Forrest City, in Forrest City, Arkansas. Plaintiff alleges that FCI Forrest City, like FCI Big Spring, is a low security.

Plaintiff alleges that in order to justify the transfer, officials initially indicated that he had demonstrated poor responsibility and poor institutional adjustment by failing to pay his fine, after his fine payments were increased to increase his custody level and transferred him to a medium facility prison.

Plaintiff alleges that officials also indicated that a transfer was needed to protect Plaintiff from inmate Alaniz, although Alaniz had been released. Plaintiff believes he has a right to complain, and officials should not have considered that he "constantly complains about the living conditions at this facility," in making the determination to transfer Plaintiff. Plaintiff further alleges that as a result of the false statements about his institutional adjustment, attitude, participation, and responsibility, Plaintiff was denied job placement in the education department and was treated harshly by staff at his new institution.

A prisoner has no constitutionally protected interest in a particular facility or a specific work assignment. *Olim v Wakinekona*, 461 U.S. 238, 244-45, 103 S. Ct. 1741, 1745 (1983); *Tighe*, 100 F.3d 41; *Bulger v. U.S Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (The BOP had no duty to transfer an inmate to a prison closer to his wife's residence.); 18 U.S.C. § 3621(b) (vesting the BOP with the discretion to determine an inmate's place of imprisonment). Plaintiff has no right to determine where he will serve his sentence.

While Plaintiff alleges that his transfer to FCI Forrest City was in retaliation for his complaints and grievances, his allegations fail to demonstrate that but for these activities, he would not have been transferred. Plaintiff alleges that FCI Forrest City and FCI Big Spring are both low security facilities.

As noted above, Plaintiff has no right to any particular job placement nor to determine where he will serve his sentence. Plaintiff's allegations indicate that both prisons are low security facilities. Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. Plaintiff's transfer has not deterred Plaintiff from continuing his activities. In *Morris* the Fifth Circuit considered whether transfer to a job and transfer to another unit met the *de minimis* standard

for a retaliation claim. *Id*. at 687. The court noted that the job transfer did not met the *de minimis* standard, but noted that transfer to a more dangerous prison is a much more serious retaliatory act and could meet the *de minimis* standard. *Id*. Plaintiff alleges that FCI Forrest City does not provide the same opportunities for physical therapy or to meet his medical needs.

Even assuming that the transfer from one low security facility to another meets the *de minimis* standard, the undisputed facts demonstrate that Plaintiff did file numerous complaints indicating his dissatisfaction with FCI Big Spring facilities, the medical care provided, policies, operations, and officials.

Plaintiff correctly notes that the Defendants set forth their position on Plaintiff's transfer in the "claims" section of their brief and not in the "arguments." As Plaintiff argues, he had become a medium security inmate by November 2003 and Defendants note that New submitted a transfer request. However, the undisputed facts demonstrate that Plaintiff was transferred to another low security facility. Plaintiff relies upon his conclusory allegations to support his retaliation claim. The undisputed facts indicate that he was transferred to a facility that was also low security and that he was dissatisfied with many aspects of his FCI Big Spring confinement. Making all inferences in Plaintiff's favor, Defendants have come forward with evidence indicating that an essential element of Plaintiff's retaliatory transfer claim is missing – that of cause. The court therefore finds that Defendants are entitled to summary judgment and qualified immunity on this claim.

G. **Other Claims**

Plaintiff argues that Defendants' motion for summary judgment failed to address claims remaining after the February 21, 2008, order of the court. Counts1a and 12(b) were dismissed. The court has addressed the claims in count 5, 7, 9, 15, and 23.

**H.      Plaintiff's Motion for Partial Summary Judgment**

Plaintiff filed a motion for partial summary judgment on June 18, 2010 (Doc. 240), and a memorandum in support thereof (Doc. 241). The court has considered Plaintiff's arguments on each of the issues raised. However, the court has found that there are no genuine issues of material fact, and after considering the uncontested facts and making all inferences in Plaintiff's favor, Defendants are nevertheless entitled to summary judgment and qualified immunity on each of the claims noted. The court therefore finds, for the reasons set forth above, that Plaintiff's motion for partial summary judgment should be denied.

**I.      Plaintiff's Various Motions Regarding Haro**

Plaintiff has filed numerous motions seeking to have a default judgment entered against Defendant Haro. The court has been unable to effect service upon Haro, despite obtaining whatever information was available regarding Haro's address from the Defendants under seal

A plaintiff proceeding *in forma pauperis* "is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). Nevertheless, once such a plaintiff is aware of possible defects in service of process, he must attempt to remedy them. *Id*. The court previously entered more than one order to serve, directing the United States marshal to serve process upon Haro, utilizing his last known address. The U.S. marshal was unable to effect service.

The Plaintiff's *pro se* status does not alter the requirement that service of process be timely and properly effected. *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988). Furthermore, the fact that the Plaintiff is incarcerated and proceeding *pro se* does not alter the requirements of proper service. *McNeil v. U.S.*, 508 U.S. 106, 113 S. Ct. 1980, 1984, 124 L. Ed. 2d 21 (1993) (pro se prisoner not excused from following procedural rules in civil litigation). The court notes that

Plaintiff's claims against Haro are similar to the claims asserted against various other Defendants, addressed herein and further notes that summary judgment should be granted in favor of all remaining Defendants on all remaining claims.

The court, therefore, finds Plaintiff's motions for default judgment against Haro filed November 9, 2009 (Doc. 187), and December 7, 2009 (Docs. 195, 196), should be **DENIED** and that  Plaintiff's motion to amend/correct filed January 22, 2010 (Doc. 207), should be **GRANTED** only insofar as the docket should reflect that the assistant United States attorney has not filed an answer or entered an appearance on Haro's behalf.  Plaintiff's claims against Haro will be **DISMISSED WITHOUT PREJUDICE** for failure to serve unless Plaintiff is able to provide the court, **within ten (10) days**, additional information that permits the court to effect service on Haro.

**J.      Plaintiff's Motion to Strike**

Plaintiff filed a detailed motion seeking to strike various portions of the summary judgment evidence submitted by the Defendants (Doc. 235).  The court agrees that the affidavit by Wright is not signed and therefore has not considered such evidence.   The court has otherwise considered the issues raised by Plaintiff's memorandum.  To the extent that any evidence submitted by the parties is not competent summary judgment evidence, it has not been considered. Indeed, the court has relied heavily upon the undisputed facts as set forth by the parties, including Plaintiff's statement of undisputed facts.  Plaintiff's motion to strike, therefore, should be **GRANTED IN PART** insofar as the court has not considered evidence submitted by the parties which was not competent summary judgment evidence.  In all other respects, Plaintiff's motion should be denied.

**K.      Plaintiff's Other Motions**

The court finds that each of Plaintiff's various motions for extension of time, to continue, and to otherwise permit additional time to file a response to the motion for summary judgment or

to continue any pre-trial conference or trial should be denied as moot including the motions filed on November 9, 2009 (Doc. 186); December 7, 2009 (Doc. 192); January 22, 2010 (Docs. 208, 209); and February 1, 2010 (Docs. 218, 219).

The court has considered Plaintiff's various motions to continue until additional discovery is permitted under Fed. R. Civ. P. 56(f). However, the court finds that additional discovery, including the additional discovery described by Plaintiff in his 56(f) motions and his motion to compel Defendants to provide the mail log would not alter the result or the grant of summary judgment in favor of Defendants. For this reason, Plaintiff's 56(f) motions filed December 7, 2009 (Doc. 194), and June 18, 2010 ( Doc. 242), as well as Plaintiff's motion to compel filed June 11, 2010 (Doc. 234), should be **DENIED**.

Plaintiff has filed several motions seeking orders of the court regarding his desires for medical care while at Dickens County Correctional Center in Spur, Texas; the Taylor County Jail in Abilene, Texas; and the R.A. Deyton Detention Facility, in Lovejoy, Georgia, and in Winton, North Carolina. *See* Docs. 190, 203, 206, and 217. Plaintiff also filed a motion seeking an order of the court requiring that his legal documents be returned to him and that he be provided access to a particular box of legal documents while he is traveling from institution to institution. *See* Doc. 209.

In order to secure a temporary restraining order or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that movant will suffer irreparable injury if the restraining order is not issued; (3) that the threatened injury to the movant outweighs any damage the restraining order might cause to the opponent; and (4) that the restraining order will not be adverse to the public interest. *See Southerland v. Thigpen*, 784 F.2d 713, 715 (5th Cir. 1986). The party seeking a restraining order or injunction must prove all four elements and failure to prove any one of them will result in denial of the motion. *See*

*Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976).

Accepting Plaintiff's allegations as true, the court is unable to find that any of the criteria for a preliminary injunction or the issuance of a temporary restraining order have been met. The court has already found that Defendants are entitled to summary judgment on all of the remaining claims against them. Plaintiff's claims which are institution-specific become moot with his transfer. This case is no longer set for any further hearings or trial. Plaintiff's allegations failed to demonstrate a substantial threat that he will suffer irreparable injury if a restraining order is not issued; that the threatened injury to the Plaintiff outweighs any damage the restraining order might cause to the Defendants; or that the restraining order will not be adverse to the public interest.

Therefore, Plaintiff's motions filed November 17, 2009 (Doc. 190), December 28, 2009 (Doc. 203), January 15, 2010 (Doc. 206), January 22, 2009 Doc. 209), and February 1, 2010 (Doc. 217), should be **DENIED**.

## V. CONCLUSION

**IT IS, THEREFORE ORDERED:**

1. Defendants' motion for summary judgment filed on June 5, 2009 (Doc. 145), is **GRANTED;** summary judgment shall be entered on Defendants' behalf on all remaining claims.

2. Plaintiff's motion for partial summary judgment filed June 18, 2010 (Doc. 240), is **DENIED**.

Any other pending motions are denied.

**SO ORDERED**.

DATED this 16th day of September, 2010.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**